IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:01-cv-00748-WYD-KLM

ROBERT C. BARR and BARBARA S. BARR,
LAMMCO PROPERTIES, LTD., a Colorado corporation,
KENNETH J. SCHWEIZER and ARLENE J. SCHWEIZER,
VINCENT J. POTESTIO and CAROL A. POTESTIO, and
ORIN LOOS, for themselves and on behalf of all others similarly situated,

    Plaintiffs,

v.

QWEST COMMUNICATIONS COMPANY, LLC, a Delaware limited liability company,
SPRINT COMMUNICATIONS COMPANY L.P., a Delaware limited partnership,
LEVEL 3 COMMUNICATIONS, LLC, a Delaware limited liability company, and
WILTEL COMMUNICATIONS, LLC, a Delaware limited liability company,

    Defendants.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES TO SETTLEMENT CLASS COUNSEL**

Under Federal Rules of Civil Procedure 23(h)(1) and 54(d)(2), Plaintiffs in this class action have moved for an award of attorney's fees and expenses to Settlement Class Counsel. Under Rule 23(h)(3), the Court must make findings of fact and state its conclusions of law. The Court does so, as follows, in granting the motion:

**Findings of Fact**

1.    This class-action settlement resolves a property-rights dispute, which arises out of the installation of fiber-optic cable on railroad rights of way by Sprint Communications Company L.P.; Qwest Communications Company, LLC f/k/a Qwest

Communications Corporation; Level 3 Communications, LLC, Level 3 Communications, Inc., and Level 3 Telecom Holdings, Inc.; and WilTel Communications, LLC (the "Settling Defendants"). The claims resolved by the Settlement affect parcels of land in Colorado covering approximately 791 miles of rights of way throughout the state. Those miles comprise four different types of railroad rights of way:

    a.    Rights of way obtained by a railroad through a private conveyance from a landowner ("Private Conveyance Rights of Way"), of which there are approximately 71.41 miles under the Settlement;

    b.    Rights of way obtained by a railroad pursuant to the 1875 General Right of Way Act, by which the United States government conveyed property rights in rights of way to certain railroads ("1875 Act Rights of Way"), of which there are approximately 422.81 miles under the Settlement;

    c.    Rights of way obtained by a railroad pursuant to a United States government right-of-way statute enacted prior to 1875, and involving a grant of only the right of way through a given section of land and not the entire section itself ("Pre-1875 Non-Section Rights of Way"), of which there are approximately 246.39 miles under the Settlement; and

    d.    Rights of way obtained by a railroad pursuant to a United States government right-of-way statute enacted prior to 1875, and involving a grant of both the right of way through a given section of land and the entire section itself ("Pre-1875 Section Rights of Way"), of which there are approximately 50.33 miles under the Settlement;

2. For each type of right-of-way property, the class representatives and the Settling Defendants — with the advice of counsel — have agreed that the relative strength of a class member's claim varies based on the case law applicable to that type of property in the context of the claims at issue here. The parties' settlement negotiations proceeded on the premise that: (a) the class members' claims for Pre-1875 Section Rights of Way are relatively weak compared to the other three types, resulting in an agreed Settlement value of $0.13 per linear foot; (b) the class members' claims for Pre-1875 Non-Section Rights of Way are somewhat stronger, resulting in an agreed Settlement value of $0.26 per linear foot; (c) the class members' claims for 1875 Act Rights of Way are even stronger, resulting in an agreed Settlement of $0.52 per linear foot; and (d) the class members' claims for Private Conveyance Rights of Way are stronger still, resulting in an agreed Settlement value of $1.96 per linear foot.[1]

3. On April 20, 2012, the Court entered an order preliminarily approving the Settlement, certifying the Settlement class, and approving the form and manner of notice. On July 31, 2012, the claims administrator mailed notices to 9,440 current and prior property owners along railroad rights of way in Colorado containing telecommunications facilities installed by the Settling Defendants, and opened a Settlement call center and website. The notice, which was posted on the website, advised in pertinent part:

---

[1] The Court understands that the Settling Defendants contend that none of the claims are valid and the class representatives contend that all of the claims are valid. Nonetheless, as part of this compromised settlement and in recognition of the relative strength of the various claims, the parties reached the aforementioned negotiated per-foot values.

> The Court will decide how much Class Counsel and any other lawyers will be paid. Class Counsel will ask the Court for attorneys' fees, costs and expenses of $1,074,000. . . . The Defendants will separately pay these fees and expenses and the payment will not reduce the benefits available for the Class.

Notice at 8. The Notice further advised that the Court would hold a Fairness Hearing on December 19, 2012, at which time the Court would "consider how much to pay Class Counsel." *Id.* On December 19, 2012, the Court held the final Fairness Hearing.

4. The Settlement Agreement provides in pertinent part: "Settlement Class Counsel may seek from the Court a cash award of fees and expenses from the Settling Defendants, in an amount not to exceed the Maximum Attorneys' Fee Award, to which the Settling Defendants will not object." Settlement Agreement § II.E.1. The Settlement Agreement defines the Maximum Attorneys' Fee Award as $1,074,000. Settlement Agreement Definitions. The Settlement Agreement further provides that "the Settling Defendants shall deposit any attorneys' fee award approved by the Court, which shall not exceed the Maximum Attorneys' Fee Award, into the interest-bearing escrow account established with U.S. Bank in New York, New York, no later than ten (10) days after the date on which the Order and Judgment becomes Final." Settlement Agreement § II.E.2.

5. The escrow account established with U.S. Bank is a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B. The escrow account is maintained by U.S. Bank in New York, New York, with the Garretson Firm Resolution Group, Inc. ("GFRG") serving as the Fund Administrator. These arrangements are

consistent with the terms of an Escrow Agreement entered into as of August 26, 2011 between Settlement Class Counsel, U.S. Bank, and GFRG.

6.    Settlement Class Counsel estimate that a minimum of approximately $2,273,000 in cash benefits are available for class members to claim. They derive that figure by multiplying the mileage figures for the four types of property described in paragraph 1 above by the number of feet per mile (5,280) and the value per mile in paragraph 2, for each of the four types of property. That calculation breaks down as follows for the four right-of-way types:

| | | |
|---|---|---:|
| a. | Private Conveyance – 71.41 miles X 5,280 feet X $1.96 | $ 739,008 |
| b. | 1875 Act – 422.81 miles X 5,280 feet X $0.52 | $1,160,867 |
| c. | Pre-1875 Non-Section – 246.39 miles X 5,280 X $0.26 | $ 338,224 |
| d. | Pre-1875 Section – 50.33 miles X 5,280 X $0.13 | $ 34,547 |
| | **Total:** | **$2,272,646**[2] |

7.    Administrative costs — to be paid separately by the Settling Defendants — in creating and updating a sophisticated database to notify class members, implement the Settlement, and process claims, are estimated at an additional $926,000.

---

[2] Settlement Class Counsel rounded this figure up to $2,273,000 in their presentation. However, they also noted that 13% of the Colorado parcels identified to date have not yet been measured by the vendors assisting in the Settlement implementation, so the mileage figures are to some degree underreported. In addition, Settlement Class Counsel have noted that for the Pre-1875 Section, Pre-1875 Non-Section, and 1875 Act claimants, if they can establish that the origin of their chain of title precedes the effective date of the statutory grant to the railroad (typically via a homestead patent from the United States to a predecessor in the title chain), they can qualify for the higher "Private Conveyance" per-foot value. As with the undercounted mileage, any such qualifications would serve to increase the amount of cash benefits available to the class. For purposes of this Order, the Court is satisfied with the estimated figure of $2,273,000 and the mathematical rationale behind that figure.

The agreed-to attorney's fees and non-taxable costs of approximately $1,074,000 — which will not reduce benefits payable to class members — bring the total gross value of the Settlement to roughly $4,273,000 (available cash benefits of approximately $2,273,000, plus administrative costs of approximately $926,000, plus attorney's fees and expenses of $1,074,000).

### Conclusions of Law

8.  Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by . . . the parties' agreement."  The Rule further provides that "[a] claim for an award must be made by motion under Rule 54(d)(2)," notice of which must be "directed to class members in a reasonable manner" and that the Court "must find the facts and state its legal conclusions under Rule 52(a)."  Fed. R. Civ. P. 23(h)(1) and (3).  In turn, Rule 54(d)(2) requires a claim for fees to be made by motion, and specifies its timing and content, including, in relevant part, "the grounds entitling the movant to the award" and "the amount sought."  Fed. R. Civ. P. 54(d)(2)(B).  Notice of this fee-award motion was provided in the class notice and on the website.

9.  "In class actions, the district court has broad authority over awards of attorneys' fees." *Law v. Nat'l Collegiate Athletic Ass'n*, 4 F.Appx. 749, 751 (10th Cir. 2001) (citation omitted).  In common fund cases like this one, the Tenth Circuit applies a "'hybrid' approach, combining the percentage fee method with the specific factors traditionally used to calculate the lodestar." *Gottlieb v. Barry*, 43 F.3d 474, 482-83 (10th Cir.1994).  "Under either methodology, the fee awarded must be reasonable." *Id.* at 482

Case 1:01-cv-00748-WYD-KLM Document 160 Filed 01/11/13 USDC Colorado Page 7 of 12

(citing *Uselton v. Commercial Lovelace Motor Freight, Inc.,* 9 F.3d 849, 853 (10th Cir.1993); *Brown v. Phillips Petroleum Co.,* 838 F.2d 451, 453 (10th Cir.), *cert. denied,* 488 U.S. 822 (1988)). "There are recognized advantages and disadvantages with each method, although the more recent trend has been toward utilizing the percentage method in common fund cases." *Id.* at 483. Indeed, "*Uselton* implies a preference for the percentage of the fund method. In all cases, whichever method is used, the court must consider the twelve . . . factors" set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir.1974).[3] *Id.*

      10.     The Court adopts the percentage-of-the-fund approach, and finds that, under it, the agreed-to fee-and-expense request is reasonable as a matter of law. Here, Settlement Class Counsel estimate that, based on the miles of rights of way covered by the Settlement, if each class member were to claim the available cash benefits, approximately $2,273,000 would be paid to qualifying class members, assuming that no land-grant class members seek the higher non-land grant (or "Private Conveyance") benefits. (To the extent those class members do seek and receive the higher amounts,

---

[3] The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. "[R]arely are all of the *Johnson* factors applicable." *Uselton,* 9 F.3d at 854. The applicable *Johnson* factors are addressed generally herein and in our preliminary-approval brief. More recent Tenth Circuit and Supreme Court precedent in fee-shifting cases casts doubt on the continuing relevance of the *Johnson* factors. *See Anchondo v. Anderson, Crenshaw & Assocs.,* 616 F.3d 1098, 1103 (10th Cir. 2010) ("In *Perdue* the Court appears to significantly marginalize the twelve-factor *Johnson* analysis") (*citing Perdue v. Kenny A. ex rel. Winn,* 130 S. Ct. 1662, 1673 (2010)).

the amount available to the class will increase.)  When estimated administrative costs of $926,000 — to be borne by the Settling Defendants — and the agreed-to attorneys' fees and expenses of $1,074,000— also to be paid separately by the Settling Defendants — are factored in, the gross value of the Settlement is approximately $4,273,000.  The $1,074,000 fee-and-expense award therefore represents 25 percent of the fund as a whole.

11.     At 25 percent of the value of the fund as a whole, the fee-and-expense award would be well within the range of reasonable percentage-fee awards in this Circuit.  *See Lucken Family Ltd. Partnership, LLLP v. Ultra Resources, Inc.*, Civil Action No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *5-*6 (D. Colo. Dec. 22, 2010) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class.") (citing, inter alia, *Vaszlavik v. Storage Technology Corp.,* 2000 U.S. Dist. LEXIS 21140, at *10 (D. Colo. Mar. 9, 2000) ("requested fee of 30% of the settlement is well within the ordinary range of common fund awards," and "[a] 30% common fund award is in the middle of the ordinary 20%-50% range and is presumptively reasonable"); *Cimarron Pipeline Construction, Inc. v. National Council on Compensation,* Nos. CIV 89-822-T, CIV 89-1186-T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) (noting that "[f]ees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis," and finding that "attorneys' fees of 33 1/3% of the common fund created by the efforts of counsel for the Class are in line with comparable other cases, [and] consistent with prevailing case law of this circuit").  The 25-percent

fee-and-expense award is especially reasonable here, where, in reaching the Settlement, Settlement Class Counsel engaged in unusually lengthy and hard-fought litigation. The Court also notes that in the twenty-one similar right-of-way settlements that have received final approval, the federal district courts in Idaho, Illinois, Alabama, North Dakota, Montana, Michigan, Minnesota, Vermont, Kansas, Indiana, Virginia, New Jersey, New York, Florida, West Virginia, Oklahoma, Maryland, Nebraska, Iowa, North Carolina, and Wisconsin approved fee-and-expense awards to class counsel ranging from 17 to 30.3 percent of the then-estimated fund.

12. In terms of lodestar, the overlapping nature of fiber-optic-cable right-of-way discovery, motions practice, research, litigation, and settlement efforts across the country for more than a decade — which culminated in this and the other state settlement agreements — have prevented Settlement Class Counsel from segregating their fees and expenses into a "Colorado-only" category or similar categories for other states. *See* Declaration of Settlement Class Counsel Dan Millea ¶ 16; Declaration of Settlement Class Counsel Irwin Levin ¶ 22. Nonetheless, it is apparent that the Colorado fee-and-expense request is amply supported by a lodestar crosscheck based on the time and expense incurred, and fees available, in resolution of all the state-by-state settlements of the fiber-optic-cable right-of-way litigation.

13. The total attorneys' fees and expenses incurred by Settlement Class Counsel in the decade-plus of right-of-way litigation culminating in this Settlement, excluding local counsel fees and expenses, were just over $60,000,000 as of March 31, 2011; that number has since increased as Settlement Class Counsel have performed

substantial work in seeking approval of the settlements in courts around the country, and it will continue to do so until the settlements are fully administered.  *See* Millea Decl. ¶ 17; Levin Decl. ¶ 23.  The Settling Defendants in the right-of-way litigation have agreed to pay a total of $41,500,000 in attorneys' fees and expenses in settlement of the forty-six state actions (and the District of Columbia) nationwide.  Millea Decl. ¶ 17; Levin Decl. ¶ 23.  Therefore, the incurred fees and expenses are subject to a *negative* multiplier — roughly .70 — on a nationwide basis and with a pro-rata Colorado allocation.

14.	Here, there was only a single objection to the proposed fee-and-expense award, and one objection to the Settlement, which, inferentially could be construed as an objection to the fee-and-expense award.  These objections are a factor to be considered.  *See Anderson v. Merit Energy Co.*, Civil Nos. 07-cv-00916-LTB-BNB, 07-cv-01025-REB-MJW, 2009 WL 3378526, at *4 (D. Colo. Oct. 20 2009) ("The absence of any Class members' objection is an additional factor that supports this Court's approval of the requested attorneys' fees.") (citations omitted); *Ramah Navajo Chapter v. Norton*, 250 F. Supp. 2d 1303, 1305 (D.N.M. 2002) (recognizing "the absence of any objections to the application for an award of attorney's fees and costs" and approving application).  Here, the Court-approved notice stated that, at the conclusion of the fairness hearing, counsel would seek a fee-and-expense award up to $1,074,000.  The notice also informed class members of their ability to object to the fee request.  Only one class member objected to it, and merely stated that the fees were "excessive."  No class member appeared at the December 19, 2012 hearing to address that concern.  As set

forth above, based on the 25-percent fee-and-expense award sought, and the lodestar crosscheck, which confirms a negative multiplier, the fee-and-expense award is far from excessive.  The absence of substantial objections or disapproval by class members to Settlement Class Counsel's fee-and-expense request further supports finding it reasonable.

**WHEREFORE** it is **ORDERED** that the motion for an award of attorney's fees and expenses to Settlement Class Counsel (ECF No. 149) is **GRANTED**.

It is further **ORDERED** that the Court approves a fee-and-expense award of $1,074,000 to Settlement Class Counsel,

It is further **ORDERED** that the Settling Defendants shall deposit the fee-and-expense award approved by the Court into the interest-bearing escrow account — established as a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B and as a trust under state law — with U.S. Bank in New York, New York, no later than ten (10) days after the date on which the Order and Judgment becomes Final, that any alleged or actual civil liability against the Settling Defendants for attorneys' fees arising out of the tort claims resolved by the Colorado Class Settlement Agreement approved by this Court is satisfied and extinguished through the Settling Defendants' payment of the fee-and-expense award, and that any interest earned on the escrow account shall be recognized as gross income of the Qualified Settlement Fund; and

It is further **ORDERED** that appointment of GFRG as the Fund Administrator for the escrow account is hereby confirmed and that the escrow account shall be governed

by the Escrow Agreement entered into as of August 26, 2011 between Settlement Class

Counsel, U.S. Bank, and GFRG.

Dated: January 11, 2013

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge